UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC SILBERG, et al.,

       Plaintiffs,                             Civil Action No.
                                               05-CV-73822

vs.

                                             HON. BERNARD A. FRIEDMAN

ZOTEC SOLUTIONS, INC.,

       Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE**

       This matter is presently before the Court on Defendant's Motion to Change Venue, per Fed. R. Civ. P. 12(b)(3). Plaintiffs have filed their lawsuit in the Eastern District of Michigan; however, Defendant wants this Court to move the case to the Southern District of Indiana. Although a plaintiff's selection of forum is often given great weight, it is not provided as much deference when the case involves a forum-selection clause. Here, there is such a clause. Therefore, having reviewed the matter, the Court will grant Defendant's Motion for Change of Venue, pursuant to 28 U.S.C. § 1404(a).

**I.**     **HISTORY OF THE CASE**

    **A.**     **FACTUAL BACKGROUND**

       All four Plaintiffs are orthopaedic surgeons. (Pl.'s Resp., 1.) Plaintiffs state that they are each independently incorporated, but they also seem to work under the umbrella of the Dearborn Orthopaedic Healthcare Center. Two of the Plaintiffs—Eric Silberg and Lawrence Morawa—each signed a contract with Zotec Solutions, Inc. ("Defendant"). (Pl.'s Amend. Compl. ¶ 6.) Defendant is a corporation that provides medical billing and collection services to physicians. (Id. at Ex. A, 1.) The contracts became effective January 1, 2001, and are set to

renew each successive year unless terminated by either of the parties.  (<u>Id.</u> at Ex. A, 2.)  Plaintiff

Silberg's contract states only his name and is signed by him.[1]  (<u>Id.</u> at Ex. A.)  On the other hand,

the first sentence of Plaintiff Morawa's contract states the name of "Dearborn Ortho Healthcare

Center ("Client")."  (Def.'s Mot., Ex. B at 1.)  In addition, on the last page of the contract,

Plaintiff Morawa's signature is on the line directly under the title of "Dearborn Ortho Healthcare

Center."  (<u>Id.</u> at Ex. B, 3.)

        The contracts are nearly identical.  Each contract states that Defendant, an Indiana

corporation, is to provide billing and collection services for a fee of five percent of all amounts

collected by Defendant before litigation.  (Pl.'s Amend. Compl., Ex. A at ¶ 3.)  For contracts

where the dispute reaches litigation, the contract entitles Defendant to receive 50 percent of any

recovered amounts.  (<u>Id.</u>)  Further, the contracts state that Defendant may "suspend services . . .

for failure to pay any outstanding invoices."  (<u>Id.</u>)  Lastly, the contracts state: "This Agreement

shall be governed by the law of the State of Indiana.  The parties agree that any litigation

involving this Agreement shall be brought exclusively in the courts of the State of Indiana, to

which jurisdiction all parties hereto consent."  (<u>Id.</u> at Ex. A, ¶ 10.)

        In January 2002, Plaintiff Joseph Finch became an employee of Plaintiff Silberg.  (Pl.'s

Resp., Ex. 1 at ¶ 2.)  Plaintiff Finch billed and collected on patients' payments, by using the

---

        [1]It should be noted that both the Plaintiffs and Defendant attach the Silberg contract as an
exhibit; however, there seems to be a few distinctions between these exhibits.  Plaintiffs' exhibit
shows "Dearborn Ortho Healthcare Center" crossed out in the first line of the contract and "Eric
Silberg" written in its place.  The contract also shows Plaintiff Silberg's signature on the line
directly beneath the title of "Dearborn Ortho Healthcare Center."  (Pl.'s Amend. Compl., Ex. A.)

        On the other hand, Defendant's version of the Silberg contract does not show the name of
"Dearborn Ortho Healthcare Center."  It only includes the name of "Eric Silberg."  (Def.'s Mot.,
Ex. A.)

services provided by Defendant.  (Id.)  He accessed the Defendant's system by using Plaintiff

Silberg's physician provider number.  (Def.'s Br. Supp. Mot., 5; Pl.'s Resp., Ex. 1 at ¶ 2.)

Plaintiff Finch states that he established his own corporation in mid-May 2003.  (Pl.'s Resp., Ex.

1 at ¶ 3.)  He continued to use Defendant's services.  In late 2003, Plaintiff Finch states that he

terminated his employment with Plaintiff Silberg, began conducting business under his own

professional corporation, and notified Defendant about his change in status.  (Id. at ¶¶ 4-5.)

Although Plaintiff Finch did not sign a written contract, he states that he continued to receive

billing and collection services from Defendant.  (Id. at ¶ 6.)  Plaintiff Finch claims that he never

saw the written contracts that were signed by Plaintiffs Silberg and Morawa.  (Id. at ¶ 9.)

In August 2004, Plaintiff Marc Milia began working with Plaintiffs Silberg, Morawa and

Finch.  (Pl.'s Resp., Ex. 3 at ¶ 3.)  Similar to Plaintiff Finch, Plaintiff Milia began using the

Defendant's services to bill and collect payments from his patients.  (Pl.'s Resp., 3.)  Plaintiff

Milia also states that he established his own corporation, in March 2004.  (Id. at ¶ 2.)

Plaintiffs claim they discovered, in the summer of 2005, that Defendant had failed to

provide the services required under the contracts.  (Pl.'s Amend. Compl. ¶ 9.)  Plaintiffs state

that an agreement was reached for Defendant to provide services until the contracts expired at

the end of 2005.  (Id. at ¶ 11.)  However, Plaintiffs claim that Defendant stopped rendering

services in October 2005.  (Id. at ¶ 13.)

## B.   **PROCEDURAL HISTORY**

Plaintiffs filed their original Complaint on October 5, 2005.[2]  They filed an Amended

Complaint on November 23, 2005.  On December 30, 2005, Defendant filed its Motion to

---

[2]The original Complaint listed only Silberg and Morawa as plaintiffs.

3

Change Venue, from the Eastern District of Michigan to the Southern District of Indiana.

Plaintiffs filed a Response. Defendant filed a Reply.

## II.    DEFENDANT'S MOTION TO CHANGE VENUE

Section 1404(a) of 28 U.S.C. states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1993). The Sixth Circuit has held that a district court has "broad discretion to grant or deny" a Section 1404(a) motion. Phelps v. McClellen, 30 F.3d 658, 663 (6th Cir. 1994) (citation omitted). In using such discretion, the district court should assess "(1) whether the action could have been brought in the proposed transferee district, (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience." IFL Group, Inc. v. World Wide Flight Servs., Inc., 306 F. Supp. 2d 709, 712, (E.D. Mich. 2004).

Here, Plaintiffs brought the case in the Eastern District of Michigan. Both parties agree, though, that the case could have been brought in the Southern District of Indiana. (Pl.'s Resp., 4; Def.'s Br. Supp. Mot., 6.) Thus, Defendant has satisfied the first prong of assessing a proposed transfer of venue.

The contention arises over whether Defendant has satisfied the second and third prongs of determining whether a venue transfer is appropriate. Both parties cite to the Western District of Michigan for a list of factors to be considered in the examination under the second and third prongs. Those factors include: "(1) convenience of the parties and witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. . . . [(6)] the relative congestion in the courts of the two forums, [(7)] the

4

public's interest in having local controversies adjudicated locally, [(8)] the relative familiarity of the two courts with the applicable law, [(9)] the plaintiff's original choice of forum, and [(10)] *whether the parties have agreed to a forum selection clause*." Viron Int'l Corp. v. David Boland, Inc., 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002) (emphasis added); Talent Tree Crystal, Inc. v. DRG, Inc., No. 1:04-CV-875, slip op. at 2 (W.D. Mich. Dec. 7, 2005).

Here, the signed written contracts include a forum-selection clause. Each of the contracts state that "any litigation involving this Agreement shall be brought exclusively in the courts of the State of Indiana, to which jurisdiction all parties hereto consent." (Pl.'s Amend. Compl. ¶ 10.) Thus, the State of Indiana is clearly the forum that has been selected as the proper site for any litigation or disputes arising from the contracts.

Although the existence of such a forum-selection provision does not terminate further analysis, it does carry a very large amount of weight when determining if transfer of venue would be proper. The United States Supreme Court has held that while a forum-selection clause is not automatically dispositive, it "represents the parties' agreement as to the most proper forum." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). See United States v. P.J. Dick, 79 F. Supp. 2d 803, 808 (E.D. Mich. 2000) (stating a party made its "'choice' of forum when it signed the Agreement which contained the forum selection clause"). A plaintiff's choice of forum usually receives great deference, but it does not receive such deference when a forum-selection clause is involved. The United States Supreme Court has reasoned that a forum-selection clause should be enforced unless the opposing party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). See P.J. Dick, 79 F. Supp. at 806 (stating "[t]he presence of the forum-selection clause in the case . . .

5

*shifts* the burden to the plaintiff to show that a transfer of venue . . . would be inconvenient"). Thus, the burden lies with the Plaintiffs to show that the other factors weigh so heavily against the forum-selection clause, so as to make a change of venue unreasonable or unjust.

Here, the Court finds that Plaintiffs have not shown that a venue transfer would be either unreasonable or unjust.  Plaintiffs argue that the case should be handled in Michigan because the Plaintiffs' principal place of business is in Dearborn, Michigan; all four Plaintiffs live in Michigan; the Plaintiffs' third-party witnesses work and live in Michigan; and Plaintiffs' documents are in Michigan.  (Pl.'s Resp., 7, 10, 13.)  On the contrary, Defendant argues that an analysis of the aforementioned factors support the enforcement of the forum-selection clause and a transfer of the case to Indiana.  The Court agrees with Defendant.

First, Defendant alleges that the convenience of the parties and witnesses is balanced. (Def.'s Br. Supp. Mot., 7.)  This seems reasonable, as each side has presented third-party witnesses who reside in that party's home state.  There seems to be a similar number of witnesses who will either have to travel from Indiana to Michigan, or from Michigan to Indiana, depending upon where the case is heard.  Either way, it appears to be a wash, as one party and its witnesses will have to travel.

Plaintiffs argue that they and their witnesses will be inconvenienced if the case is held in the Southern District of Indiana.  This argument does not hold up.  "Inconvenience" is more than just being upset or reluctant about having to drive a few hours in a car or travel one hour by plane, such as would be the situation here.  The Supreme Court has stated that a "party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that

6

party to his bargain." M/S Bremen, 407 U.S. at 17-18.  In fact, the United States Supreme Court has enforced a forum-selection clause that transferred a case from the State of Washington to Florida.  Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991).  In Carnival Cruise Lines, Plaintiffs were forced to travel across the country because of the transfer of venue.

Here, Plaintiffs reside in Michigan, and Defendant is in Indiana.  The distance pales in comparison to the distance in Carnival Cruise Lines.  Plaintiffs' opposition to Defendant's Motion seems to rest more on a sense of frustration and minimal inconvenience, than on a severe denial of justice.  Thus, Plaintiffs have not shown that a transfer of venue to the Southern District of Indiana would cause such a severe inconvenience that it would rise to the level of a denial of justice.

Second, the accessibility of the sources of proof seems to be even as well.  Defendant states that its principal place of business and the necessary documents for this case are in Indiana.  (Def.'s Br. Supp. Mot., 7.)  Plaintiffs, though, contend that Defendant's records could easily be transported to Michigan.  (Pl.'s Resp., 10.)  Further, Plaintiffs state that their hard-copy records are in Michigan and are not easily transportable.  (Id.)  Plaintiffs' argument again does not hold up.  The transportation of documents is not significant in this case, as "there are various convenient methods for easily transporting documents."  Viron Int'l Corp., 237 F. Supp. 2d at 817.  In Viron International, the court found that there are reasonable ways to transport documents from Michigan to Florida, or vice-versa.  Id.  Here, the parties are from Michigan and Indiana—a considerably closer proximity than Michigan and Florida.  There surely is a reasonable method to transport the necessary documents a few hours to an adjacent state.  Thus, this factor favors neither party.

Third, the cost of securing testimony from witnesses seems to be balanced, especially

7

given the close proximity of the two venues.  Thus, this factor favors neither party.

Fourth, there seems to be no practical problems or expected delays in one venue versus the other venue.  Thus, this factor seems to be balanced between the two districts.

Fifth, the interest of justice favors adhering to the forum-selection clause because two of the four Plaintiffs signed the contracts.  If the Court were to split this case into two cases—one case with the signatory Plaintiffs to be held in Indiana and one case with the non-signatory Plaintiffs to be held in Michigan—then piecemeal litigation would result.  This fragmentation could be avoided by trying the case in one district.  Even the Plaintiffs state that their "claims against Defendant all arise from a common nexus."  (Pl.'s Resp., 12.)  Plaintiffs further state that their "claims are similar, arise from the same operative facts, will require testimony from the same witnesses, and production of similar evidence."  (Id.)  Dividing this common action into two cases would not serve judicial economy and may even result in inconsistent results over the same matter.  Thus, the interest of justice weighs in favor of maintaining the case in one district, the Southern District of Indiana.

Sixth, the relative congestion of the courts in the two forums does not seem to be a significant factor.

Seventh, the public interest does not seem to be implicated in any way, as no compelling state-law interest favors one district over the other.

Eighth, Defendant argues that the relative familiarity with the applicable law weighs in favor of an Indiana venue.  Here, the applicable law is Indiana law.  The contracts expressly state that "[t]his Agreement shall be governed by the law of the State of Indiana."  (Pl.'s Amend. Compl., Ex. A at ¶ 10; Def.'s Mot., Ex. B at ¶ 10.)  Although a Michigan federal court is quite capable of interpreting Indiana law, a federal court in Indiana certainly has more experience in

doing so.

Finally, the original choice of forum would seem to weigh in favor of maintaining the case in the Eastern District of Michigan, as that is the district where Plaintiffs chose to bring their lawsuit. However, this factor must not be considered in isolation, for there is also a forum-selection clause. The Court finds that the clause is applicable to all four Plaintiffs.

The forum-selection provision clearly applies to Plaintiffs Silberg and Morawa because they each signed a contract that contained a forum-selection clause. The contract is slightly more than two pages in length and contains only 11 numbered paragraphs. The forum-selection clause, only two sentences in length, is written clearly and is easy to understand, especially for sophisticated professionals like the Plaintiffs here. Thus, the forum-selection clause undoubtedly applies to signatory Plaintiffs Silberg and Morawa.

In addition, the forum-selection clause also applies to Plaintiffs Finch and Milia. Plaintiffs Finch and Milia argue that they should not be subject to the forum-selection clause because they did not sign the contract. This seems unreasonable, as Plaintiffs Finch and Milia seem to want the benefits of the contract but not all of its terms.

Either the unsigned contract is unenforceable against these two Plaintiffs, or the contract is enforceable according to its terms. Plaintiffs Finch and Milia cannot sue based on the contract but then also claim that they are not bound by the contract because they did not sign it. If the unsigned contract were not enforceable, then Plaintiffs Finch and Milia would not be bound by its terms and conditions. It follows, though, that Defendant would also not be bound. If that were the case, then Defendant would owe no obligation to perform or provide services to Plaintiffs Finch and Milia. Thus, there would be no breach.

Here, though, the contract *is* enforceable against Plaintiffs Finch and Milia. Plaintiffs

Finch and Milia argue that they are independently incorporated and have separate verbal contracts with Defendant, so they assert that their contracts are not subject to a forum-selection clause.  However, the Court is not persuaded.  The contract signed by Plaintiff Morawa quite clearly is a contract between Defendant and the Dearborn Orthopaedic Healthcare Center.  The contract's first sentence reads: "This agreement is . . . between Zotec Solutions, Inc. ("Zotec"), an Indiana corporation, and Dearborn Ortho Healthcare Center ("Client")."  (Def.'s Mot., Ex. B at 1.)  Further, the contract's last line reads "Dearborn Ortho Healthcare Center," under which Plaintiff Morawa has signed his name.  (Id. at Ex. B, 3.)  It appears that Plaintiff Morawa is signing on behalf of the Center.  Therefore, by the agreement's express terms, the contract binds the Defendant and the Dearborn Orthopaedic Healthcare Center, which seems to be the group name under which the Plaintiffs work.  For instance, all of the Defendant's invoices are made out to the "Dearborn Ortho Healthcare Center" and sent to the same address.  (Pl.'s Resp., Exs. 2 and 4.)  Plaintiffs, though, stress the fact that each invoice also states the individual Plaintiff's name as well.  This does not matter, as Plaintiffs are still working under the umbrella of the Dearborn Orthopaedic Healthcare Center.  Further, Plaintiff Finch used Plaintiff Silberg's physician provider number to access Defendant's system.  Moreover, Plaintiffs Finch and Milia used Defendant's billing and collection system in the same manner as did Plaintiffs Silberg and Morawa.  Based on their own actions, their interaction with Defendant, and the express terms of the contract, Plaintiffs seem to be operating as a group of physicians.  Thus, all Plaintiffs are bound by the terms of the contract with Defendant, and that contract expressly includes a forum-selection clause.

## III.   CONCLUSION

Based upon the record established and documentary evidence presented, the Court finds

that the applicability of the contract's forum-selection clause is not outweighed by any of the

other factors.  For the reasons stated above, the Court finds that the case should be transferred

from the Eastern District of Michigan to the Southern District of Indiana, pursuant to 28 U.S.C. §

1404(a).  Accordingly,

       IT IS ORDERED that Defendant's Motion for Change of Venue is granted.



       ___s/Bernard A. Friedman_____
       BERNARD A. FRIEDMAN
       CHIEF UNITED STATES DISTRICT JUDGE

Dated:  April 17, 2006
      Detroit, Michigan


**I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.**


_____**/s/ Patricia Foster Hommel**_____
     **Patricia Foster Hommel**
   **Secretary to Chief Judge Friedman**

11